**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | |
|---|---|
| LINDA GREGG,<br>2809 Boston Street<br>Baltimore, Baltimore County, MD 21224 )<br><br>            Plaintiff,<br><br>       v.<br><br>SUCAMPO PHARMACEUTICALS, INC.,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>PETER GREENLEAF.,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>PAUL EDICK,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>JOHN H. JOHNSON,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>MAUREEN E. O'CONNELL,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>ROBERT J. SPIEGEL,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>TIMOTHY P. WALBERT,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>KAREN SMITH,<br>805 King Farm Boulevard, Suite 550<br>Rockville, Montgomery Co., MD 20850,<br><br>and | Case No. _____<br><br>JURY TRIAL DEMANDED |

| | |
|---|---|
| SUN ACQUISITION CO., | ) |
| c/o The Corporation Trust Company | ) |
| Corporation Trust Center | ) |
| 1209 Orange Street, Wilmington, DE 19801, | ) |
| | ) |
| Defendants. | ) |
| | ) |

# COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Linda Gregg ("Plaintiff"), by her undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff brings this action as a public stockholder of Sucampo Pharmaceuticals, Inc. ("Sucampo" or the "Company") against the members of Sucampo's Board of Directors (the "Board" or the "Individual Defendants") and Sucampo for their violations of Section 14(d)(4) and Rule 14D-9 promulgated thereunder by the U.S. Securities and Exchange Commission (the "SEC"), and 20(a), arising out of their attempt to sell the Company to Mallinckrodt plc ("Mallinckrodt") and its subsidiary Sun Acquisition Co. ("Sun").

2. On December 22, 2017, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") by which Mallinckrodt would acquire Sucampo through a tender offer conducted by Sun (the "Proposed Transaction"), with each share of Sucampo common stock exchangeable for $18.00 in cash (the "Tender Offer"). The Proposed Transaction has an enterprise value of approximately $1.2 billion.

3. On January 16, 2018, the Company filed a Schedule 14D-9 (the "Recommendation Statement") in connection with the Tender Offer. The Recommendation Statement solicits the

2

approval of the Proposed Transaction to Sucampo stockholders through a materially misleading and incomplete recitation of the financial projections of Sucampo, the financial analysis performed by the Company's financial advisor, Jefferies LLC ("Jefferies"), and the process leading up to the Proposed Transaction. The Tender Offer commenced on January 16, 2018, and expires on February 13, 2018 at 8:00 A.M. Eastern time.

4. Without additional information, the Recommendation Statement is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Recommendation Statement, the Individual Defendants (defined below) participated in the solicitation even though they knew, or should have known, that the Recommendation Statement was materially false and/or misleading. The Recommendation Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from completing the Tender Offer unless and until the material information discussed below is disclosed to the holders of Sucampo common stock or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331-32, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder.

8. The Court has personal jurisdiction over all of the defendants because each is either a corporation that conducts business in and maintains operations in this District, or is an individual

3

who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) Sucampo maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

10. Plaintiff is, and has been at all times relevant hereto, a stockholder of Sucampo.

11. Defendant Sucampo is a Delaware corporation with its headquarters located at 805 King Farm Boulevard, Suite 550, Rockville, Maryland, 20850. Sucampo common stock trades on the Nasdaq Stock Exchange under the ticker symbol "SCMP."

12. Defendant Peter Greenleaf ("Greenleaf") has served as Chairman of the Board since January 2016 and as Chief Executive Officer and a director of the Company since March 2014.

13. Defendant Paul Edick ("Edick") has served as a director since July 2016.

14. Defendant John H. Johnson ("Johnson") has served as a director of the Company since December 2014 and as Lead Independent Director since January 2016..

15. Defendant Maureen E. O'Connell ("O'Connell") has served as a director of the

4

Company since February 2013.

16. Defendant Robert J. Spiegel ("Spiegel") has served as a director and the Chairman of the Board since January 2015.

17. Defendant Timothy P. Walbert ("Walbert") has served as a director of the Company since October 2015.

18. Defendant Karen Smith ("Smith") has served as a director of the Company since July 2017.

19. Defendants Greenleaf, Edick, Johnson, O'Connell, Spiegel, Walbert, and Smith are collectively referred to herein as the "Individual Defendants," and the Individual Defendants are sometimes collectively referred to herein as the "Board."

20. Defendant Sun is a Delaware corporation and wholly-owned subsidiary of Mallinckrodt, formed for the purpose of effecting the Proposed Transaction. Sun is named as a defendant for the purpose of obtaining the relief sought by Plaintiff.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21. Sucampo is a biopharmaceutical company focused on the development and commercialization of pharmaceutical products, with treatments on the market or in development for gastroenterology, ophthalmology, and oncology-related disorders.

22. In a press release dated December 26, 2017, the Company announced that it had entered into the Merger Agreement with Mallinckrodt, pursuant to which the Company will be acquired by Mallinckrodt and stockholders will receive $18.00 in cash for each share of Sucampo common stock. This consideration, combined with debt payments, represents a total enterprise value of approximately $1.2 billion.

23. In relevant part, the press release reads:

STAINES-UPON-THAMES, United Kingdom and ROCKVILLE, Md., Dec. 26, 2017 /PRNewswire/ -- Mallinckrodt plc (NYSE: MNK), a leading global specialty pharmaceutical company, and Sucampo Pharmaceuticals, Inc. (NASDAQ: SCMP), a global biopharmaceutical company, today announced that they have entered into an agreement under which Mallinckrodt will acquire Sucampo, including its commercial and development assets. The transaction was approved by the Boards of Directors of both companies.

"Mallinckrodt's acquisition of Sucampo is the latest milestone towards our vision of becoming an innovation-driven specialty pharmaceutical growth company focused on improving outcomes for patients with severe and critical conditions," said Mark Trudeau, Chief Executive Officer and President of Mallinckrodt. "The acquisition brings near-term net sales and earnings accretion through AMITIZA and bolsters our pipeline in rare diseases with VTS-270 and CPP-1X/sulindac. We look forward to adding the Sucampo portfolio and welcoming members of its team to Mallinckrodt."

"This transaction is a testament to the hard work and dedication of Sucampo's employees. Together we have made extraordinary progress in our mission to provide options for patients affected by diseases with few or no current treatment options, and to their caregivers and physicians. We believe that this transaction with Mallinckrodt represents significant value for shareholders," said Peter Greenleaf, Chairman and Chief Executive Officer of Sucampo. "With the addition of its significant resources and expertise, we believe Mallinckrodt is a natural partner to accelerate the development of our rare disease assets in NPC and FAP, and to continue to provide AMITIZA for patients suffering from constipation-related disorders."

**Sucampo's Commercial Assets**

AMITIZA® (lubiprostone), a leading global product in the branded constipation market, is approved by the U.S. Food and Drug Administration (FDA) for treatment of chronic idiopathic constipation (CIC) in adults, irritable bowel syndrome with constipation (IBS-C) in women 18 years of age and older, and opioid-induced constipation (OIC) in adult patients with chronic, non-cancer pain, including patients with chronic pain related to prior cancer or its treatment who do not require frequent opioid dosage escalation. AMITIZA is a chloride channel activator which increases fluid secretion and motility of the intestine, facilitating passage of stool. The FDA is currently reviewing a supplemental New Drug Application (sNDA) for AMITIZA in children 6 to 17 years of age with pediatric functional constipation (PFC). The sNDA received a Priority Review designation and has a user fee1 goal date of January 28, 2018.

Roughly 40 million patients in the U.S. suffer from some form of chronic constipation. While the most common treatments include over-the-counter

laxatives, branded prescription drugs hold about 10% of the total chronic constipation market, resulting in approximately 4.2 million prescriptions and annual growth of 10% to 15%. In 2016, net sales of branded products for treatment of CIC, OIC and IBS-C were $1.6 billion, with AMITIZA holding approximately 30% of those net sales. Of the branded products currently marketed, only AMITIZA is approved for three constipation indications in the U.S. The drug is promoted through commercial agreements in the U.S., the United Kingdom and Switzerland (all through Takeda Pharmaceutical Company Ltd.), and in Japan (Mylan N.V.). An Investigational New Drug Application for the product has been accepted in China (Harbin Gloria Pharmaceuticals Co., Ltd.). Reported 2016 global net sales of AMITIZA equaled $456 million. If approved for PFC in the first quarter of 2018, AMITIZA would be the first and only approved prescription therapy available to treat children with PFC, a condition which affects approximately 18% of the pediatric population.

RESCULA® (unoprostone isopropyl ophthalmic solution) 0.15%, is indicated for ocular hypertension and open-angle glaucoma, and marketed in Japan. Mallinckrodt will acquire global rights to the product, with annual net sales of approximately $9 million.

**Sucampo's Development Assets**

VTS-270 is in Phase 3 development for Niemann-Pick Type C (NPC). NPC is a rare, neurodegenerative, and ultimately fatal disease that can present at any age. NPC is caused by mutations in either the NPC1 or NPC2 genes, resulting in the disruption of the trafficking of intracellular cholesterol, leading to intracellular lipid accumulation in various tissues, including the brain, liver, and spleen. NPC presents with neurologic and visceral features that overlap with other diseases often leading to a missed or delayed diagnosis. Neurodegenerative presentation in NPC is a major driver of morbidity and mortality. On average, patients die 12.6 years from the onset of neurological symptoms. There are four main types of the disease – types A, B, C1 and C2; NPC encompasses types C1 and C2, which represents 95% of cases and causes accumulation of cholesterol and other lipids in cells, resulting in severe neurological, systemic or psychiatric disorders. Manifestations of the genetic disorder typically occur in childhood, with occasional late onset, and average diagnosis at ten years of age. NPC is usually fatal, and the majority of cases lead to death before age 20. Diagnosis is challenging due to the variability of symptoms6, which could improve with awareness created by a new treatment option. Worldwide estimated prevalence for the rare disease is approximately 2,000 to 3,000 patients, with about 500 cases in the U.S. alone

The FDA granted VTS-270 its Orphan Drug Designation, and the resulting seven years' exclusivity would be applied upon approval of the drug. The European Medicines Agency (EMA) also granted VTS-270 Orphan Drug status. In addition, the FDA granted the compound its Breakthrough Designation, indicating the drug is (1) intended to treat a serious or life-threatening disease or condition alone or combined with one or more other drugs, and (2) preliminary clinical evidence

7

indicates it may demonstrate substantial improvement over existing therapies on one or more clinically significant endpoints. The Breakthrough Designation status results in expedited review by the agency.

Additionally, since VTS-270 has been designated as a rare pediatric disease treatment, it is expected – upon successful completion of the VTS-270 Phase 3 trial and submission of the regulatory filing and subsequent approval of the New Drug Application (NDA) by the FDA – that the company would receive a Priority Review Voucher, awarded by the agency to those sponsors that meet certain criteria. Once received, the voucher could be redeemed by Mallinckrodt to receive priority review of a subsequent separate product's marketing application, or the company could choose to monetize the voucher. If the company receives the voucher and chooses to monetize it, a part of the proceeds would be shared with VTS-270's former owner's (Vtesse Inc.) shareholders.

Results of the VTS-270 Phase 1/2a data showed the potential for a disease modifying effect based on slowing of progression on neurological, disease-specific outcomes measures and promising clinical improvements in patients with NPC. Current therapeutic approaches are palliative and show limited evidence of efficacy in delaying disease progression. If approved, VTS-270 will provide patients with a directly targeted disease-modifying therapy. The Phase 3 trial is ongoing, with the NDA filing currently expected in 2018, and approval anticipated in 2019. Mallinckrodt will acquire global rights to the therapy. Peak net sales for the product, if approved, are estimated at greater than $150 million.

CPP-1X/sulindac is in Phase 3 development for Familial Adenomatous Polyposis (FAP) under a collaborative agreement between Cancer Prevention Pharmaceuticals (CPP) and Sucampo. FAP results from a genetic mutation leading to uncontrolled growth of hundreds to thousands of polyps in the lower digestive tract . Left untreated, there is almost a 100% lifetime risk of developing colorectal cancer. The disease typically progresses without clear warning signs until reaching advanced stages. It can also lead to abnormal manifestations in other organs including bone, skin, retina, teeth and other malignant lesions. FAP is a rare disease that affects 1 in 10,000 people with approximately 30,000 cases estimated in the U.S. Of those diagnosed with FAP, approximately 70% are diagnosed with inherited disease, with the remaining 30% diagnosed separately and likely at a later stage.

The FDA granted CPP-1X/sulindac its Orphan Drug Designation, as well as its Fast Track designation, a process designed to facilitate development and expedite the review of drugs to treat serious conditions and fill an unmet medical need. Orphan Drug status was also granted to the therapy by the EMA.

A Phase 2 Proof of Concept trial in FAP and a Phase 2/3 trial in high-risk polyp formers demonstrated the potential for CPP-1X/sulindac in patients with FAP. Current therapeutic interventions are limited to endoscopies and surgeries, which only decrease polyp burden in the gastrointestinal tract and do not address other

disease manifestations. CPP-1X/sulindac, if approved, will target the underlying disease mechanism, preventing polyp growth and delaying disease progression.

Completion of the Phase 3 trial is currently expected at the end of 2018. Assuming positive Phase 3 data, Mallinckrodt would acquire the exclusive option to obtain North American commercial rights for a nominal fee, with CPP retaining rights to the rest of the world. The NDA filing is currently expected in early 2019, with approval also anticipated in 2019. Peak U.S. potential net sales for the product are estimated at greater than $300 million. A part of the profits from commercialization of CPP-1X/sulindac would be shared with CPP.

"Both NPC and FAP are devastating conditions associated with substantial morbidity and mortality, and effective therapies are needed," said Steven Romano, M.D., Chief Scientific Officer and Executive Vice President of Mallinckrodt. "In addition to the current patient benefits provided by AMITIZA, we look forward to bringing VTS-270 and CPP-1X/sulindac to patients with critical unmet medical needs."

**Commercialization**

If approved, Mallinckrodt expects to build on the limited commercial infrastructure Sucampo has built for both VTS-270 and CPP-1X/sulindac with its sales organizations currently focused on rare diseases. At launch, patient access to these unique treatment options would also be supported and enhanced by Mallinckrodt's strong relationships with insurance companies and group purchasing organizations. Mallinckrodt's existing infrastructure of clinical and medical affairs experts will also support approval and launch of both products.

**Financial Considerations and Closing**

Sun Acquisition Co., a subsidiary of Mallinckrodt, will commence a cash tender offer to purchase all of the outstanding shares of Sucampo Pharmaceuticals' common stock for $18.00 per share. The total transaction value (including anticipated payments in respect of Sucampo's debt) is approximately $1.2 billion. The acquisition is expected to be funded through borrowings under Mallinckrodt's existing revolving credit facility, a new secured term loan facility and/or cash on hand. Following the transaction, Mallinckrodt intends to utilize its significant cash generation to focus on reducing outstanding debt over time.

Sucampo stockholders holding approximately 32% of the outstanding Sucampo shares have entered into a tender and support agreement for this transaction.

Mallinckrodt expects accretion from the acquisition to adjusted diluted earnings per share of at least $0.30 in 2018 and at least double that amount in 2019, assuming a first quarter 2018 close.

Guidance on the impact of the acquisition to the company's GAAP diluted earnings per share has not been provided due to the inherent difficulty of forecasting the

9

timing or amount of items that would be included in calculating such impact.

The transaction is subject to customary closing conditions, including expiration of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and the tender of a majority of the outstanding Sucampo shares.

**The Recommendation Statement Materially Misleads Stockholders By Omission**

24. Defendants filed the Recommendation Statement with the SEC in connection with the Proposed Transaction. The Recommendation Statement omits material information with respect to Sucampo's financial projections relied upon by the Company's financial advisor, Jefferies, as well as the financial analyses performed by Jefferies underlying its fairness opinion. This omitted information renders the Recommendation Statement materially misleading. If disclosed, the omitted information would significantly alter the total mix of information available to Sucampo's stockholders.

25. First, the Recommendation Statement discloses projections for unlevered free cash flows all projections for fiscal years 2018-2027. However, the Recommendation Statement omits the line items underlying the unlevered free cash flows, including: (i) cost of goods and operating expenses; (ii) selling and marketing expense; (iii) research and development costs; (iv) general and administrative expenses; (v) royalty payments; (vi) intangible assets amortization; (vii) CPP-1X/sulindac profit sharing with Cancer Prevention Pharmaceuticals; (viii) depreciation and amortization; (ix) stock-based compensation; (x) capital expenditures; and (xi) changes in net working capital. These line-items are necessary to provide a complete and accurate disclosure of the Company's financial future, rather than a partially disclosed and inherently misleading portrait meant to solicit stockholder support.

26. The Recommendation Statement also omits material information regarding Jefferies' valuation analyses.

27. With respect to the *Discounted Cash Flow Analysis* of Sucampo, for example, the

Recommendation Statement omits (i) Sucampo's net operating loss carryforwards and certain other tax attributes; (ii) Sucampo's implied terminal value; (iii) the inputs and assumptions underlying the selection of the selected range of perpetuity growth rates of (5.0%) to (15.0%); and (iv) the inputs and assumptions underlying the selection of the discount rate range of 11.0% to 12.0%.

28. With respect to Jefferies' *Selected Public Companies Analysis*, the 14D-9 fails to disclose the individual multiples Jefferies' calculated for each public company evaluated and utilized to render an implied per share equity value reference range.

29. Similarly, with respect to Jefferies' *Selected Precedent Transactions Analysis*, the 14D-9 fails to disclose the individual multiples Jefferies' calculated for each transaction evaluated and utilized to render an implied per share equity value reference range.

30. These omissions of material fact represent selective disclosures made by Defendants in the Recommendation Statement that significantly alter the total mix of information that Defendants used to market the Proposed Transaction. Defendants have misled investors into believing the Proposed Transaction is fair while refusing to disclose the full picture provided to the Board by its financial advisor.

31. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

## **CLAIMS FOR RELIEF**

### **COUNT I**

**Claims Against All Defendants for Violations of Section 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

32. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

34. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

35. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Recommendation Statement false and/or misleading.

36. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

37. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

38. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

### COUNT II

### Against the Individual Defendants for
### Violations of Section 20(a) of the 1934 Act

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Sucampo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Sucampo and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Recommendation Statement.

43. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

(A) declaring that the Recommendation Statement is materially false or misleading;

(B) enjoining, preliminarily and permanently, the Proposed Transaction;

(C) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

(D) directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their violations of the Exchange Act;

(E) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(F) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 22, 2018                                     **LEVI & KORSINSKY LLP**

                                                             By: */s/ Donald J. Enright*

                                                                           _____
Donald J. Enright (Bar No. 13551)
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
T: (202) 524-4290
F: (202) 333-2121
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*